UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CARLOS ANTONIO MONTANEZ,

     Petitioner,

v.              Case No:  5:11-cv-527-Oc-27PRL

SECRETARY, FLORIDA DEPARTMENT OF
CORRECTIONS and FLORIDA ATTORNEY
GENERAL,
     Respondents.
_____/

## OPINION AND ORDER

   Carlos Antonio Montanez ("Petitioner") initiated this action pursuant to 28 U.S.C. § 2254 by filing a petition for habeas corpus relief (Doc. 1).  Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought by Petitioner should not be granted (Doc. 5).  Thereafter, Respondents filed a response in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. 10).  Petitioner filed a reply and a supplemental reply to the response (Doc. 12; Doc. 14).

   Petitioner raises a total of nine claims in his petition.[1]  He alleges that: (1) the state committed a discovery violation by withholding material evidence (Doc. 1 at 9); (2)  the charging information was defective as to count two of the second amended information (Doc. 1 at 20); (3) counsel was ineffective for failing to preserve for appellate review the state's unconstitutional use of a peremptory strike (Doc. 1 at 31); (4) counsel was ineffective for failing to object to an erroneous jury instruction (Doc. 1 at 43); (5) counsel was ineffective for failing to make an adequate argument in support of his

_____

[1] Petitioner included his ineffective assistance of trial counsel claims as sub-claims of Claim Three and raised two disparate ineffective assistance of appellate counsel claims in Claim Four. The Court finds that numbering each claim separately makes organization of the claims less confusing, and aids in cross referencing within the body of the Order.

motion for judgment of acquittal (Doc. 1 at 55); (6) counsel was ineffective for failing to fully investigate the medical evidence (Doc. 1 at 68); (7) counsel was ineffective for failing to call the victim's stepfather and her treating physician to testify at trial (Doc. 1 at 80); (8) appellate counsel was ineffective for failing to argue that the jury instructions given by the trial judge were fundamentally flawed (Doc. 1-1 at 14); and (9) appellate counsel was ineffective for failing to argue on direct appeal that the state's evidence was insufficient to support his convictions (Doc. 1-1 at 20).

Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development[,]" an evidentiary hearing will not be conducted. *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003). Upon due consideration of the petition, the response, the replies, and the state court record, this Court denies each of Petitioner's claims.

## 1.    Background and Procedural History

On February 8, 2007, Petitioner was charged by second amended information with lewd and lascivious battery of a child over twelve, but less than sixteen years of age (count one) and with promoting a sexual performance by a child (count two) (App. A at 1-2). [2]   The case went to trial on February 21, 2007 (App. B; App. C). After trial, Petitioner was found guilty as charged on both counts (App. A at 63). Petitioner was sentenced to consecutive terms of fifteen years in prison on each count (App. A at 118, 123; App. D). The convictions and sentences were *per curiam* affirmed on appeal (App. H); *Montanez v. State*, 982 So. 2d 702 (Fla. 5th DCA 2008).   Petitioner's motion for rehearing was denied (App. J).

On October 10, 2008, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") (App. K). In the motion,

---

[2] Unless otherwise noted, references to appendices are to those filed by Respondents on February 27, 2012 (Doc. 11). The trial transcript is contained in App. B and App. C. References to the trial transcript will be cited as (T. at ____).

Petitioner raised ten claims of ineffective assistance of counsel (App. K at 1-55).  After holding an evidentiary hearing (App. KK), the post-conviction denied Petitioner's Rule 3.850 motion, and the Fifth District Court of Appeal *per curiam* affirmed (App. GG; App. O); *Montanez v. State*, 39 So.3d 334 (Fla. 5th DCA 2010).  Petitioner's motion for rehearing was denied (App. Q).

On March 18, 2010, Petitioner filed a state motion for habeas corpus relief in which he raised three claims of ineffective assistance of appellate counsel (App. R).  The Fifth District Court of Appeal denied relief (App. U).  Petitioner's motions for rehearing and reconsideration were also denied (App. V; App. W).

On February 9, 2011, Petitioner filed a second Rule 3.850 motion in which he alleged that his court-appointed post-conviction attorney was ineffective (App. FF).  The post-conviction denied the motion on the ground that there was no legal merit to the claim (App. GG).  The Fifth District Court of Appeal *per curiam* affirmed (App. KK); *Montanez v. State*, 66 So.3d 948 (Fla. 5th DCA 2011).

Petitioner filed the instant petition in this Court on September 2, 2011 (Doc. 1).

## II.  **Governing Legal Principles**

### a.    *The Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identified the governing legal principle, but applied it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406).  The unreasonable application inquiry requires the state court decision to be more than incorrect or erroneous, rather, it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward,* 592 F.3d at 1155.

Finally, the Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003) (dictum).  When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Miller–El*, 537 U.S. at 340

(explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

### b.   *Ineffective Assistance of Counsel*

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984).  A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.*  Because both parts of the *Strickland* test must be satisfied in order to demonstrate a violation of the Sixth Amendment, a district court need not address the performance prong if the petitioner cannot meet the prejudice prong, or vice versa. *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89.  In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.  Indeed, the petitioner bears the burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).  "To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"

*Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Finally, the Supreme Court has clarified that, pursuant to the AEDPA, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

### c. *Exhaustion and Procedural Default*

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Conner*, 404 U.S. 270, 275-76 (1971)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Coleman v. Thompson*, 501 U.S. 722,

6

735 n.1 (1991).  Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law.  *Id.* at 750.  If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court.  *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances.  First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default.  "To establish 'cause' for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).  To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different.  *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  Actual innocence means factual innocence, not legal insufficiency.  *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

IV.    **Analysis**

    *a.*    *Claim One and Claim Six*

In Claim One of his petition, Petitioner asserts that the state committed a discovery violation by withholding "expert reports or statements from Munroe Regional Medical Center." (Doc. 1 at 9). Specifically, Petitioner directs the Court to Exhibit A of his petition, the State's discovery exhibit, which lists "Munroe Regional Medical Center, Custodian of Records" as a potential witness (Doc. 1 at Ex. A-1).  Petitioner argues that this discovery exhibit proves that the State had the victim's medical records but subsequently informed his "defense counsel that 'there are no medical reports[,]' thereby impairing the adversarial process by prejudicing the defense's preparation for trial as such comment led defense to believe, early in pre-trial investigations, that medical evidence does not exist to support Petitioner's claim of innocence, hindering investigations and depriving defense evidence material to the preparation of defense." (Doc. 1 at 9-10).   In Claim Six of the petition, Petitioner asserts that trial counsel was ineffective for failing to investigate the lack of medical evidence and subpoena the medical reports (Doc 1 at 68).

Petitioner asserts that he raised Claim One in his first Rule 3.850 motion (Doc. 12 at 2-4). A review of the claim raised in Petitioner's Rule 3.850 motion indicates that Petitioner raised a *Brady*[3]

---

[3] In *Brady v. Maryland*, 373 U.S. 83, 87, 83 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Throughout this Order, the Court uses the terms "*Brady* material" and "*Brady* violation" consistent with the United States Supreme Court's clarification of these terms in *Strickler v. Greene*:

> Thus the term "*Brady* violation" is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence-that is, to any suppression of so-called "*Brady* material"-although, strictly speaking, there is never a real "*Brady* violation" unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.

527 U.S. 263 (1999).

claim in his first Rule 3.850 motion where it was interpreted by the post-conviction court as a claim of ineffective assistance of counsel (App. K at 3, 162).   However, after holding an evidentiary hearing on the issue, the post-conviction denied this claim because it determined that no *Brady* violation had occurred.   Specifically, the post-conviction court concluded that Petitioner had failed to show that any medical records or other *Brady* material actually existed, and that the State suppressed any medical records, or that the alleged suppression resulted in prejudice (App. K at 162-63).   The post-conviction court also found Petitioner's testimony "neither credible nor believable on this ground." (App. K at 163).   In regard to Petitioner's ineffective assistance of counsel claim on this issue, the post-conviction court concluded that Petitioner had not put in competent evidence to meet the burden under *Strickland* to prove ineffective assistance of counsel (App. K at 168).   This Court will review Claims One and Six under 28 U.S.C. § 2254(d)(1) to determine whether the post-conviction court's adjudication of these claims was contrary to, or unreasonable applications of, *Brady* or *Strickland*.[4]

"In order to establish a *Brady* violation, a defendant must prove: (1) that the government possessed evidence favorable to the defense, (2) that the defendant did not possess the evidence and could not obtain it with any reasonable diligence, (3) that the prosecution suppressed the evidence,

---

[4] Respondents contend that, because Petitioner did not raise a *Brady* claim in state court on direct appeal, he is now barred from raising Claim One in his habeas petition unless he can show cause for his failure to raise the issue and actual prejudice resulting from the error (Doc. 10 at 9-10). Although this point is well taken, it does not alter this Court's analysis of Claim One.  In *Strickler v. Greene*, the United States Supreme Court recognized that the second and third elements of a successful *Brady* claim overlap with the "cause and prejudice" showing that will excuse a petitioner from a procedural default. 527 U.S. 263, 282 (1999); *see also Banks v. Dretke*, 540 U.S. 668, 671 (2004) ("Corresponding to the second *Brady* component (evidence suppressed by the State), a petitioner shows 'cause' when the reason for his failure to develop facts in state-court proceedings was the State's suppression of the relevant evidence; coincident with the third Brady component (prejudice), prejudice within the compass of the 'cause and prejudice' requirement exists when the suppressed evidence is 'material' for *Brady* purposes.").  Accordingly, even if Petitioner's failure to present Claim One on direct appeal was in error, the post-conviction court addressed Claim One on the merits, and this Court will review the post-conviction's adjudication of this claim, even if only to determine whether to excuse the procedural default.

and (4) that a reasonable probability exists that the outcome of the proceeding would have been different had the evidence been disclosed to the defense." *United States v. Schier*, 438 F.3d 1104, 1106 n. 1 (11th Cir. 2006) (*citing Moon v. Head*, 285 F.3d 1301, 1308 (11th Cir. 2002)).  "[N]either mere speculation that the prosecution might possess information helpful to the defense nor base assertions, without more, of the presence of exculpatory information in the prosecution's files would be sufficient to warrant a *Brady* determination." *Brown v. United States*, Case No. 3:02-cr-14, 2006 WL 1582421 at *2 (M.D. Ga. 2006) (quoting 25 James Wm. Moore et al., Moore's Federal Practice § 616.06[2] (3d ed. 1997)).

Here, Petitioner alleges that "the State's Discovery Exhibit clearly shows that the State has, in their possession or control, expert reports or statements from Munroe Regional Medical Center (Ex. A1-A3).  However, [the] State withheld said reports as they were not included within the exhibits of the State's discovery." (Doc. 1 at 9).   A review of the exhibit referenced by Petitioner indicates that the Custodian of Records at the Munroe Regional Medical Center is listed as a person who may have information "relevant to any offense charged." (Ex. A).[5]   Contrary to Petitioner's assertion otherwise however, the exhibit does not reference any expert reports or statements from Munroe Regional Medical Center.  In addition, the category of the Record Custodian is not listed as a "witness known by the prosecutor to have any material information that tends to negate the guilt of the defendant as to any offense charged." Ex. A; Fla. R. Cr. P. 3.220(b).

At the state evidentiary hearing held on this claim, Petitioner's trial counsel, Candace Hawthorne ("Hawthorne"), was questioned by his collateral counsel, Andrew Pozzuto ("Pozzuto") (App. KK).  Hawthorne testified that after receiving the discovery exhibit, she asked for the victim's medical records, but was told that none existed (App. KK at 6).  She testified that no exams had been performed on the victim to establish penetration and that no rape kit had been done (App. KK at 7).

---

[5] References to exhibits are to those filed with Petitioner's petition (Doc. 1).

She also stated that she was not aware of any medical examinations performed on the victim to determine whether her hymen was still intact (App. KK at 7).  The following exchange occurred:

| | |
|---|---|
| POZZUTO. | All right.  Now, as of today's date, have you any evidence that there are Munroe Regional Medical Center reports that would be important or relevant to your defense in this case? |
| HAWTHORNE. | I have no knowledge that there were any records from Munroe Regional Medical Center. |
| Q. | Do you have any knowledge that the State Attorney tried to suppress the medical response to you? |
| A. | I have no knowledge that the State Attorney acted in any way other than giving me what I needed when he got it. |
| Q. | There's an allegation in ground one that two weeks prior to trial, the existence of medical reports and results were made known to defense counsel during the deposition of Steven Fowler when he testified a medical exam was done within 24 hours of the alleged incident.  Does that ring a bell? |
| A. | Yes.   And Mr. Fowler is in the medical profession.   His explanation was I believe he took [the victim] in and – |
| Q. | But Mr Fowler, for the record, is her stepfather? |
| A. | Yea, yeah.  And had her checked out but there were no medical records.  We never got those records.  We tried to get them through Munroe Regional.  There were no records. |
| | So, I don't know if, because of his position in the medical community, he took her in and someone looked at her and gave her a shot, but there were no records, and even if there were, Mr. Pozzuto, I don't know how they would have helped. |
| Q. | Would that have changed your defense in any way? |
| A. | I don't know how it would have helped our defense. |

(App. KK at 9-10).  On cross examination, Hawthorne re-asserted that the existence of medical records would not have changed her approach to defending Petitioner's case (App. KK at 34).

Petitioner claims that, notwithstanding Hawthorne's understanding otherwise, exonerating medical reports did indeed exist.  Specifically, Petitioner asserts:

11

> Two months after being informed by [the] prosecutor that no medical records exist and two weeks prior to trial, the existence of medical reports and results were made known to defense counsel during the deposition of Steven Fowler when he testified that a medical exam was in fact done within 24 hours of the alleged incident and the results showed no signs of sexual activity; that [the victim] was still a virgin and her hymen was intact. (Ex. F2).

(Doc. 1 at 10).  Petitioner asserts that Mr. Fowler's deposition testimony "unveils the Due Process Clause violation[.]" (Doc. 1 at 10).  A review of the deposition testimony referenced by Petitioner does not support his assertion that any medical reports necessarily existed nor that the hypothetical report would have shown that the victim was still a virgin.

Prior to trial, Hawthorne took the deposition of Mr. Fowler, the victim's step-father.  In the deposition, he testified that after he learned that the thirteen year old victim had been sexually active with Petitioner, he decided to take her to the hospital to have her tested for venereal disease and pregnancy (Ex. F-1).  He testified that prior to the exam, the victim told him that she had sex with Petitioner (Ex. F-2).  The following exchange occurred:

| | |
|---|---|
| HAWTHORNE. | Okay, Now, did the medical exam show anything? |
| FOWLER. | Excuse me? |
| Q. | In other words, did the medical exam show that your daughter was no longer a virgin? |
| A. | Excuse me one second. |
| | . . . |
| A. | No, it did not ma'am.  Again, not to my knowledge, no.  That was not the term and hymen – intact hymen is no longer a sign of having sex or not, so – but again, the specifics you know were not, you know, discussed as far as having an intact hymen. |
| Q. | Okay. |
| A. | But she was not pregnant and she was treated with antibiotics for any venereal disease[.]. |

(Ex. F-1 and F-2).[6]  Petitioner does not explain how the attached portions of Mr. Fowler's deposition indicate the existence of any exculpatory medical records or support his assertion that an exam "showed no sign of sexual activity; that [the victim] was still a virgin and her hymen was intact." (Doc. 1 at 10).    To the contrary, Fowler testified that his step-daughter was treated for venereal disease and was not pregnant; he testified that the specifics regarding his step-daughter's state of virginity were not discussed.    Accordingly, given Hawthorne's testimony that she had asked for medical records, but was informed that no such medical records existed, Petitioner has failed to establish the first three prongs of the *Brady* analysis.  Likewise, Petitioner has failed to demonstrate that counsel was constitutionally ineffective for failing to pursue records that did not exist.

Moreover, for Petitioner to succeed on a *Brady* claim, he must demonstrate a "reasonable probability" that, had favorable evidence been disclosed to his counsel, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 681 (1985).  Mr. Fowler's testimony does not establish that any medical records, even if they existed, would have exonerated Petitioner.   Hawthorne testified that the existence or disclosure of any medical records, even if the victim's hymen had remained intact, would not have changed her trial strategy.  Therefore, Petitioner has not established that the results of his trial would have differed had any of the victim's medical records been disclosed to the defense.  Petitioner has not satisfied the fourth prong of the *Brady* analysis.  Likewise, Petitioner has not satisfied *Strickland*'s prejudice prong.

The record before this Court suggests neither a *Brady* violation nor ineffective assistance of counsel, and an analysis of the state court's decision on these claims under the standards set forth in 28 U.S.C. § 2254(d) precludes relief.  There is no indication that the results reached by the post-conviction court are at odds with any United States Supreme Court case with "materially

---

[6] The Court notes that Petitioner has not included the entire deposition transcript with his petition, but only the portions which he alleges show a *Brady* violation.  Likewise, Respondents did not provide the Court with the entire deposition transcript.

indistinguishable facts." *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The post-conviction court's conclusion that no *Brady* violation had occurred and that counsel was not ineffective were reasonably justified in light of the evidence presented in the state court proceedings. Accordingly, Claims One and Six are denied pursuant to 28 U.S.C. § 2254(d).[7]

### b. Claim Two

Petitioner asserts that the state's second amended information fails to allege an essential element of count two against him (Doc. 1 at 20). Specifically, Petitioner asserts that in count two of the second amended complaint, he was charged with sexual performance by a child under Florida Statute § 827.071(3) and that the state failed to prove that his conduct came within the statutory provisions of § 827.071(3) because "without a third party's presence, the act alleged is not a performance[.]" (Doc. 1 at 20).[8] Thus, argues Petitioner, "[b]eing that ultimate facts necessary to constitute an essential element is omitted, [the] information fails to invoke [the] convicting court's jurisdiction as it fails to charge a crime under the laws of Florida, rendering Petitioner's conviction in violation of due process under aforesaid law and also under *Thornhill v. Alabama*, 310 U.S. 88 (1940), wherein the U.S. Supreme Court stipulated that a conviction on a charge not made by information is a denial of due process." (Doc. 1 at 20).

Petitioner raised this claim in his first Rule 3.850 motion, and the post-conviction court denied the claim:

> The Defendant appears to argue that the second amended Information filed is fundamentally defective pertaining to Count II and cannot support a conviction under the federal and state constitutions. The Defendant is wrong. First, the second amended Information is not fundamentally defective. Second, once the Defendant pled not

---

[7] Alternatively, Petitioner has not demonstrated cause and prejudice to excuse the procedural default of Claim One, and Claim One is dismissed as procedurally defaulted.

[8] Count Two of the Second Amended Information stated, in pertinent part that Petitioner "did unlawfully produce, direct or promote a sexual performance, to-wit: videotaping sexual activity between himself and [the victim], knowing the character and content thereof, which included sexual conduct by a child less than 18 years of age. . ." (App. A at 1).

14

guilty to the charge, any issues pertaining to the Second Amended Information are not proper under a Rule 3.850 proceeding. *Simon v. State*, 997 So. 2d 490 (Fla. 4th DCA 2008); *State v. Perkins*, 977 So. 2d 643, 646 (Fla. 5th DCA 2008). Third, the making of a motion picture or videotape, which includes sexual conduct by a child less than 18 years of age is, in and of itself, sufficient to constitute promoting a sexual performance by a minor child (i.e., Count II) even though the motion picture or videotape had never been exhibited before an audience. *Ladd v. State*, 715 So. 2d 1012 (Fla. 1st DCA 1998); *Schmidt v. State*, 563 So. 2d 1095 (Fla. 4th DCA 1990), *modified on other grounds*, 590 So. 2d 404 (Fla. 1991). The Defendant has failed to meet his evidentiary burden of proof as to Ground II.

(App. K at 163). Petitioner asserts that the post-conviction court's denial of this claim was based upon an unreasonable determination of the facts because the information "clearly fails to allege facts that would constitute the 'performance' element of a crime charged or place Petitioner's conduct within the prescriptions of the law as designed by legislature." (Doc. 1 at 24).

Respondents argue that this claim is not properly before this Court because it raises only a question of state law (Doc. 10 at 11). This Court agrees. Although Petitioner attempts to couch this claim in terms of a due process violation, a review of the petition and supporting documents reflects that Petitioner's claim is a state law claim challenging the state courts' interpretation of Florida Statute § 827.071(3). It is well established that "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir.1992). Petitioner's claim is not cognizable on federal habeas corpus review because he makes no showing of a federal constitutional violation. *See* 28 U.S.C. § 2254(a); *Swarthout v. Cooke*, 131 S.Ct. 859, 861 (2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.") (internal quotations and citations omitted); *Estelle*, 502 U.S. at 67 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Even assuming, *arguendo*, that Petitioner adequately stated a constitutional due process violation, the facts as alleged do not support his claim for relief. The gravamen of Petitioner's

argument is that he is not guilty of promoting a sexual performance by a child because the state did not allege or prove "that a third party was present when alleged act occurred to constitute the alleged act as a performance[.]" (Doc. 1 at 22).  As noted by the post-conviction court, Florida courts have consistently held that exhibition of a video-tape before an audience is <u>not</u> a required element of the offense of promoting a sexual performance by a child and that merely making a video showing a child involved in sexual conduct violates Florida Statute § 827.071(3).  *See Jenrett-Smith v. State*, 114 So.3d 427 (Fla. 2d DCA 2013); *Bishop v. State*, 46 So.3d 75 (Fla. 5th DCA 2010) (conviction permitted under § 827.071 "even where the video tape of the child's engagement in sexual conduct is not shown to third persons."); *Ladd v. State*, 715 So.2d 1012 (Fla. 1st DCA 1998) (making of motion picture or video tape that involves sexual conduct by child less than eighteen years of age is in and of itself sufficient to constitute performance); *see also Killian v. State*, 761 So.2d 1210 (Fla. 2d DCA 2000); *Schmitt v. State*, 563 So.2d 1095 (Fla. 4th DCA 1990), *approved in part, quashed in part, on other grounds,* 590 So.2d 404 (Fla.1991); *Firkey v. State*, 557 So.2d 582, 584 (Fla. 4th DCA 1989) ("we are confident that the legislature did not intend that the creator of such a motion picture . . . should escape prosecution because he had not, as yet, had the time to exhibit his vile handiwork."), *disapproved on other grounds, Wilson v. State*, 635 So.2d 16 (Fla. 1994); *Bishop v. State*, 46 So.3d 75, 79 (Fla. 5th DCA 2010) ( "The statute, contrary to Bishop's suggestion, does not require that the sexual performance be exhibited to third persons.  An 'audience' can consist of a single individual and that individual can be the defendant.").

Accordingly, the post-conviction court's adjudication of this claim was neither contrary to clearly established federal law, nor based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  To the extent it is cognizable on federal review, Claim Two is denied pursuant to 28 U.S.C. § 2254(d).

### c.      *Claim Three*

Petitioner asserts that his trial counsel was constitutionally ineffective because she failed to reserve for appellate review the State's "unconstitutional use" of a peremptory strike (Doc. 1 at 31). Specifically, Petitioner states that defense counsel objected to the State's use of a peremptory challenge to prospective juror Gregory Dejesus, but failed to renew the objection before the jury was sworn, "which is required to properly preserve issue for appeal under state law." (Doc. 1 at 32). Petitioner argues that counsel's failure to renew the objection was prejudicial because the "record clearly shows trial court erred in granting strike on proffered reasoning because the explanation fails by all means to rebut inference of discrimination or to satisfy state's burden under controlling *Batson* analysis as explanation illustrates reason was a surrogate for racial bias and a pretext." (Doc. 1 at 32).

Petitioner raised this claim in his first Rule 3.850 motion, and the trial court denied the claim on the ground that Petitioner could not show prejudice from any failure by counsel to preserve her objection for appeal.  Specifically, the post-conviction court determined:

> [F]rom a practical standpoint, a juror selection error justifying post-conviction relief must be so fundamental and glaring that it should have alerted a trial judge to intervene, even in the absence of a proper objection. . . . Applying this standard to the present case and based upon the lack of competent evidence at the 3.850 hearing of any actual prejudice <u>at trial</u>, the Court finds that the Defendant has completely failed to meet his burden of proof under *Strickland* as to Ground III.

(App. K at 165) (internal citations omitted) (emphasis in original).   Petitioner now argues that the post-conviction misapplied clearly established federal law in determining that Petitioner had not shown prejudice because, under *Batson*, prejudice is presumed (Doc. 1 at 41).     Alternatively, Petitioner argues that the post-conviction court should have focused on whether he was prejudiced on appeal rather than at trial (Doc. 1 at 41-43).  Both arguments are incorrect.

In *Carratelli v. Stepp*, 382 F. App'x 829 (11th Cir. 2010), the Eleventh Circuit examined a similar claim.  Carratelli argued that his trial attorneys were constitutionally ineffective for failing to properly preserve cause challenges to jurors.  Carratelli contended that the state court decisions were

contrary to, or were unreasonable applications of clearly established federal law, when the state courts

determined that he had not been prejudiced *at trial* by his attorneys' failures, instead of examining

whether he was prejudiced *on appeal*.   The Eleventh Circuit noted:

> [T]here is no clearly established federal law by the Supreme Court specifically
> addressing whether the federal court should examine the prejudice on appeal rather
> than at trial in a case like this one.  Accordingly, the district court correctly affirmed
> the state court decisions holding that the relevant prejudice inquiry should focus on
> the trial, not the appeal, under the facts presented in this case.

*Carratelli*, 382 F. App'x at *3.   Accordingly, the Court concludes that, by examining whether

Petitioner suffered prejudice at trial, the post-conviction court properly applied federal law in

resolving this ineffective assistance of counsel claim.

Petitioner neither alleges, nor shows how he was prejudiced at trial by counsel's failure to

renew the objection to the prosecutor's peremptory strike of Dejesus.[9]  Even had counsel re-stated

her objection by renewing it before the jury was sworn, Petitioner has not shown that a biased juror

was seated or that the outcome of the trial would have differed.  It is Petitioner's burden to show that

the outcome of the trial would have been different had counsel renewed her objection, and he fails to

carry that burden. *See Acker v. Sec. 'y, Fla. Dep't of Corr.*, No. 8:07–cv–263–T–30TBM, 2009 WL

1149438, at *6–11 (M.D. Fla. Apr.28, 2009); *Puryear v. Sec'y, Dep't of Corr.*, No. 8:09–cv–2586–T–

30EAJ, 2010 WL 2991432, at *3–4 (M.D. Fla. July 27, 2010); *Cookinson  v. Sec'y, Fla. Dept. of

Corr.*, Case No. 8:10-cv-1751, 2013 WL 5487046 (M.D. Fla. 2013).

---

[9] The race neutral reason offered for striking prospective juror Dejesus from the jury was that the
prosecutor felt, because Dejesus was only 21 years old, that he was "too young to handle this type of
case." (T. at 65).  Specifically, the prosecutor stated that he did not think a 21 year old would be "fair
and impartial to the State in dealing with what is basically consensual sex with a minor." (T. at 66).
The trial court determined that the explanation was sufficiently race neutral and granted the State's
peremptory challenge over defense counsel's objection (T. at 66).  To the extent that Petitioner would
now assert that he suffered prejudice from Dejesus' exclusion because the 21-year old prospective
juror would have voted for acquittal based solely on his age, Petitioner cannot rely on the "luck of a
lawless decision maker . . ." to make a showing of prejudice. *Strickland*, 466 U.S. at 695.

There is no indication that the results reached by the post-conviction court are at odds with any United States Supreme Court case with "materially indistinguishable facts." *Bell*, 535 U.S. at 694. Neither has Petitioner shown that the trial court's adjudication of this claim was based upon an unreasonable determination of the facts. Accordingly, Claim Three is denied pursuant to 28 U.S.C. § 2254(d).

### d.     *Claim Four*

Petitioner asserts that trial counsel was ineffective for not objecting to erroneous jury instructions (Doc. 1 at 43). Specifically, Petitioner argues that the second amended information charged him only with "penetrating [the victim's] vagina with his penis and /or mouth or tongue" whereas the definition of sexual activity given to the jury "includes various prohibited acts punishable under statute that petitioner was not charged with." (Doc. 1 at 43). Petitioner raised this claim in his first Rule 3.850 motion, and the post-conviction court denied the claim, noting that the given jury instructions were a correct statement of the law and that counsel had objected to them (App. K at 166). Accordingly, the post-conviction court concluded that counsel was not ineffective. *Id.* Petitioner now argues that the post-conviction court's consideration of this claim was insufficient because it did not address the specific flaws that Petitioner had argued in his Rule 3.850 motion. Therefore, asserts Petitioner, "the state court never addressed and ruled on merits of claim" and failed to properly apply the performance standards as established in *Strickland v. Washington* (Doc. 1 at 48-50). This Court does not agree that the state court's adjudication of this claim was contrary to *Strickland*.

At trial, the jury was instructed that the state had to prove that Petitioner engaged in sexual activity with the victim (T. at 220). Sexual activity was defined as "the oral, anal, or vaginal penetration by or union with the sexual organ of another." (T at 220). The jury was further instructed that "union means contact." (T. at 220). Finally, the jury was instructed that, if it found Petitioner

guilty of lewd or lascivious battery, it must also "make a determination of whether or not the sexual organ of [the victim] was penetrated[.]" (T. at 229).

Hawthorne objected to some of the language in the standard jury instruction, but did not make a specific objection to the use of the terms "sexual activity" or "union with." (T. at 187). The objection was overruled. At the evidentiary hearing on this claim, Hawthorne was asked why she had not objected to the use of the term "union with" in the jury instruction, given that the second amended information charged Petitioner only with penetration (App. KK at 17-19). Hawthorne agreed that she could have objected, but testified that she did not believe an objection would have changed the outcome of the case (App. K at 17). After Pozzuto asked whether Hawthorne believed that the use of the term "union with" instead of "penetration" made it easier for the state to prove count one of the second amended information, the following exchange occurred:

| HAWTHORNE. | Mr. Possuto, [the victim] took the stand and testified that she had sex with [Petitioner] for – |
| --- | --- |
| POZZUTO. | Define sex.  What did she say, the kind of sex?  Oral sex or – |
| A. | Sex in the pool, sex in the stairwell, sex involving his penis, her vagina, his mouth, her vagina, his mouth, her breasts.  This is – |
| Q. | So what you're saying is that there was testimony at the trial that there was penile penetration? |
| A. | Yes, that's my recollection. |
| Q. | So therefore, adding the words "union with'" wouldn't have mattered? |
| A. | No. |
| Q. | Would it have changed the verdict in any way? |
| A. | I don't believe so. |
| Q. | All right.  Because I know there was a video that was shown but there was other evidence gathered besides the video [of] penetration? |
| A. | Yes. |

Q.                    And that would be direct testimony of –

A.                    [The victim], yes.

(App. KK at 19-20).  Indeed, at trial, the victim testified that she began having sex with Petitioner

when she was twelve years old and would do so three or four times per week between March and

August of 2006 (T at 96 – 100).  She defined sex as "his penis and my vagina," and she defined oral

sex as Petitioner's penis in her mouth or Petitioner's mouth on her vagina (T. at 97-98).  Some of this

activity was video recorded, and she identified herself on a CD as the person having sex with

Petitioner (T. at 100-102, 108).    In addition, Petitioner's friend, Paul Zukowski, testified that

Petitioner told him that he was going to "sleep with" the victim, and later admitted to him that he had

done so (T. at 151-52).  After trial, Petitioner was found guilty of lewd or lascivious battery as charged

in the information with a specific finding that penetration of the victim's sexual organs had occurred

(App. A at 63).

Courts defer heavily to an attorney's actions and professional judgment.  *Strickland*, 466 U.S.

at 689.  Claims raised under *Strickland* receive "doubly deferential federal judicial review" when the

state courts have already adjudicated their merits.  *Knowles v. Mirzayance*, 556 U.S. 111 (2009).  In

practice, this standard gives wide latitude to a state court's adjudications and the question becomes

whether there is *any* reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 131 S.Ct. at 1410.  Given the evidence that Petitioner had engaged in sexual activity with

the victim, nothing before this Court evinces that Hawthorne's decision not to further challenge the

jury instructions was unreasonable.

Even assuming, *arguendo*, that counsel should have objected to the "union with" instruction,

Petitioner fails to show that he was prejudiced.  Testimony was presented that Petitioner had engaged

in sexual activity with the victim, a video recording showed Petitioner engaged in sexual activity with

the victim, and the jury made a specific finding that penetration had occurred.  Considering the weight

of evidence against Petitioner, there is not a reasonable probability that the jury would have reached

a different verdict had counsel made a more specific objection to the jury instructions.  Accordingly,

Claim Four fails to satisfy either prong of *Strickland*, and is denied. 28 U.S.C. 2254(d).

    *e.*    ***Claim Five***

Petitioner argues that counsel was ineffective for failing to make a sufficient motion for

judgment of acquittal (Doc. 1 at 55).  Specifically, Petitioner asserts that counsel should have argued

that the state had not proven "penetration" as opposed to "union with" and that the state had not

proven that a third party was present when the sex video of the victim had been taken (Doc. 1 at 55-

58).

Petitioner raised this claim in his first Rule 3.850 motion, and the post-conviction court denied

the claim on both prongs of *Strickland* (App. K at 165-66).  The court noted that counsel had made a

motion at trial for a judgment of acquittal which was denied.   Next, the court determined that "there

was clearly evidence presented by the State, at trial, that satisfied all elements of each count," and

that any motion made by defense counsel – even over and above the motion made by counsel at trial

– would have been denied  (App. K at 166).  Petitioner raises the same arguments raised in Claim

Two and Claim Four of the instant petition to assert that the post-conviction court's conclusion was

based upon an objectively unreasonable determination of the facts or involved an unreasonable

application of *Strickland*.  Again, this Court does not agree.

The Florida Supreme Court has said the following in reference to motions for judgment of

acquittal:

> [a] defendant, in moving for a judgment of acquittal, admits not only the facts stated
> in the evidence adduced, but also admits every conclusion favorable to the adverse
> party that a jury might fairly and reasonably infer from the evidence. The courts should
> not grant a motion for judgment of acquittal unless the evidence is such that no view
> which the jury may lawfully take of it favorable to the opposite party can be sustained
> under the law. Where there is room for a difference of opinion between reasonable
> men as to the proof or facts from which an ultimate fact is sought to be established, or
> where there is room for such differences as to the inferences which might be drawn

from conceded facts, the Court should submit the case to the jury for their finding, as it is their conclusion, in such cases, that should prevail and not primarily the views of the judge. The credibility and probative force of conflicting testimony should not be determined on a motion for judgment of acquittal.

*Lynch v. State*, 293 So.2d 44 (Fla. 1974).

Applying the above reasoning to the facts of the present case, Petitioner's argument that counsel failed to properly argue his motion for judgment of acquittal is without merit. There is not a reasonable probability that, had counsel argued as Petitioner suggests, the motion for judgment of acquittal would have been granted and that Petitioner would have been acquitted. *See* discussion *supra* Claims Two and Four Parts III(b), (d). "Although in hindsight one can speculate that a different argument may have been more effective, counsel's argument does not fall to the level of deficient performance simply because it ultimately failed." *Ferguson v. State*, 593 So.2d 508 (Fla. 1992). Accordingly, the post-conviction court reasonably concluded that, even had counsel raised Petitioner's current penetration and performance arguments, the judgment of acquittal would have been denied. Claim Five is denied pursuant to 28 U.S.C. § 2254(d).

### f.    Claim Seven

Petitioner asserts that trial counsel was ineffective for failing to call Steven Fowler and the victim's treating physician at trial to discuss the results of the medical exam done on the victim (Doc. 1 at 80-87). Petitioner raised this claim in his first Rule 3.850 motion, and the trial court denied the claim on the ground that Petitioner had not proven it:

As to the failure to call the witnesses, again, none of these witnesses testified at the 3.850 hearing. The Court finds that the Defendant has failed to meet his evidentiary burden of proof, under *Strickland*, that any of these witnesses would have provided cogent, material, relevant testimony that would have suggested to this Court, at the 3.850 evidentiary hearing, that, if these witnesses had testified on behalf of the Defendant at trial, it would call into question the reliability of the verdict

(App. K at 168).   Petitioner asserts that the post-conviction court's ruling was unreasonable, particularly considering that a portion of Mr. Fowler's deposition testimony had been attached to his Rule 3.850 motion (Doc. 1 at 85).  Petitioner's argument is unavailing.

Self-serving speculation about potential witness testimony is insufficient to support a claim of ineffective assistance of counsel.  *See United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[A] defendant cannot simply state that the testimony would have been favorable").   Rather, a petitioner must present evidence about the witness testimony in the form of actual testimony, or an affidavit.   *Id.*   Petitioner did not present Fowler's or the hypothetical treating physician's actual testimony or an affidavit indicating to what they would have testified.   In fact, the only record evidence indicating Fowler's testimony is a statement in the deposition stating that he had <u>not</u> discussed with medical staff the state of his step-daughter's virginity.  *See* discussion *supra* Claim One Part III(a).  Petitioner's statements regarding how a treating physician would have testified and how the testimony would have aided his case, notwithstanding the overwhelming evidence against him, is nothing but speculation. Thus, Petitioner has not made the requisite factual showing and Petitioner's self-serving speculations regarding the witness' testimony will not sustain a claim of ineffective assistance of counsel.   *Johnson v. Alabama*, 256 F.3d 1156 (11th Cir. 2001) (mere speculation that missing witnesses would have been helpful is insufficient to meet a petitioner's burden of proof); *Aldrich v. Wainwright*, 77 F.2d 630, 636 (11th Cir. 1985) (speculation insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation).

The Petitioner has not demonstrated that the post-conviction court's adjudication of this claim was contrary to clearly established federal law or based upon an unreasonable determination of the facts.  Claim Seven is denied pursuant to 28 U.S.C. § 2254(d).

### g.      *Claim Eight*

Petitioner asserts that appellate counsel was ineffective for failing to argue on direct appeal that the jury instructions were fundamentally flawed (Doc. 1-1 at 14).  Specifically, Petitioner argues that the jury instructions regarding the definition of "sexual activity" and the inclusion of the term "union" in the instructions was an error (Doc. 1-1 at 15).  In essence, Petitioner asserts that appellate counsel was ineffective for failing to raise the same issue on appeal that trial counsel failed to object to. *See* discussion *supra* Claim Four Part III(d).  Petitioner raised this issue in his state habeas petition where it was rejected by the Fifth District Court of Appeal (App. G; App. H).

As noted by Petitioner in Claim Four, trial counsel did not object to the jury instructions on the grounds raised by Petitioner in this claim.  To raise an argument on appeal, the argument must first be presented to the trial court, "and the specific legal argument or ground to be argued on appeal must be part of the presentation." *Archer v. State*, 613 So.2d 446, 448 (Fla. 1993).  Failure to preserve the argument by objection precludes presentation of the argument on direct appeal.  *See Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) ("It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court."); *Diaz v. Sec'y, Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005) ("Under Florida law, an error that passed without objection cannot be raised on appeal; appellate counsel, therefore, is not ineffective for failure to raise a meritless argument.").  An exception to this rule exists if appellate counsel failed to raise a claim, although not preserved for appeal, that presents a fundamental error. *See Griffis v. State*, 848 So.2d 422, 427 (Fla. 1st DCA 2003) ("Jury instructions are subject to the contemporaneous objection rule and absent such an objection at the trial, errors in instructions cannot be raised on appeal unless fundamental error occurred."); *Parker v. Sec'y, Dep't of Corr.* 331 F.3d 764, 772–73 (11th Cir. 2003) (stating that Florida law provides that a jury instruction can be challenged on appeal even absent a contemporaneous objection at trial if the error was fundamental error).  A fundamental error

"reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." *Spencer v. State*, 842 So.2d 52, 74 (Fla.2003) (citations omitted).

The overwhelming evidence against Petitioner including the testimony of the victim, the video of Petitioner and the victim engaged in a sexual act, and Petitioner's admissions to his friend precludes a finding of a fundamental error.  Since this issue was not preserved for appeal, appellate counsel's failure to argue it was not unreasonable.  *Diaz v. Sec. Dept. of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005) (counsel not ineffective for failing to raise meritless argument).  Accordingly, the state court's adjudication of this claim was neither contrary to clearly established federal law nor based upon an unreasonable determination of the facts.  Claim Eight is denied pursuant to 28 U.S.C. § 2254(d).

### h.      Claim Nine

Petitioner asserts that appellate counsel was ineffective for failing to raise a claim that the evidence adduced at trial was insufficient to support his convictions (Doc. 1-1 at 20).  Specifically, Petitioner asserts that the state did not adequately prove that he penetrated the victim's vagina with his penis or mouth or tongue as alleged in the second amended information (Doc. 1-1 at 20-21). Petitioner also argues that there was insufficient evidence to support his conviction for making the video of his sexual relations with the victim because the state did not adequately prove the presence of a third person when the video was taken (Doc. 1-1 at 22).  Petitioner argues that "appellate counsel's failure to raise the insufficiency of the evidence claims as fundamental error prejudiced Petitioner as it would have vacated his convictions on direct appeal with prejudice, under Double Jeopardy protections[.]" (Doc. 1-1 at 24).   Petitioner raised this claim on direct appeal and the Fifth District Court of Appeal denied the claim (App. G; App. H).

As noted in Claim Four, in regards to the sexual battery claim, the jury in this case made a specific finding of penetration as charged in the second amended information.  Moreover, evidence

was produced at trial supporting penetration.  The victim testified that she and Petitioner had both vaginal and oral sex.  In addition video evidence presented at trial recorded Petitioner performing oral sex on the victim.  *See* discussion *supra* Claim Four Part III(d).

Petitioner's claim that his conviction on count two of the second amended complaint required the video of Petitioner performing oral sex on the victim to have been viewed by a third party or made in a third party's presence is completely without legal support.  *See* discussion *supra* Claim Two Part III(b).  Based on the record, this Court cannot conclude that appellate counsel was constitutionally ineffective under *Strickland* for failing to raise these issues on appeal.  Claim Nine is denied pursuant to 28 U.S.C. § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.    <u>Certificate of Appealability</u>

Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller– El*, 537 U.S. at 335–36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.     The Amended Petition for Writ of Habeas Corpus filed by Carlos Antonio Montanez (Doc. 1) is **DENIED,** and this case is **DISMISSED WITH PREJUDICE;**

2.     Petitioner is **DENIED** a Certificate of Appealability; and

3.     The Clerk of the Court is directed to terminate all pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on this 24th day of January, 2014.

JAMES D. WHITTEMORE
UNITED STATES DISTRICT JUDGE

SA: OrlP-4 1/23/14
Copies: All Parties of Record